UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA,                                                18-CR-665 (PKC)

        -against-                                                                             ORDER

MATTHEW SPRULL,

                 Defendant.
-----------------------------------------------------------x
CASTEL, U.S.D.J.

        Defendant Matthew Sprull,[1] proceeding pro se, moves for a sentence reduction to a non-incarceratory sentence for extraordinary and compelling reasons. 18 U.S.C. § 3582(c)(1)(A)(i). For reasons to be explained, the motion will be denied.

        Sprull entered a plea of guilty to Count 1 (Hobbs Act Robbery, 18 U.S.C. § 1951) and Count 2 (Escape, 18 U.S.C. § 751) of the Indictment on June 24, 2019. (ECF 39.) He was sentenced to a total term of imprisonment of 92 months—77 months on Count 1 and 15 months on Count 2, to run consecutively. (Id. at 2.)

        Sprull's offense conduct is described in his revised final Presentence Investigation Report ("PSR"). At the time of sentencing, the defendant did not object to the facts as contained in the PSR and revised by the Court. (ECF 40 at Tr. 6.)[2] Sprull and his co-defendant Janssen Smalls approached two victims who were getting into an SUV; Smalls brandished a firearm and shot one victim, removing jewelry from that victim, while Sprull took a bag and jewelry from a

---

[1] Defendant alternates between spelling his last name "Sprull" and "Spruill" in his submissions. The Court notes that his last name is spelled as "Sprull" on the Bureau of Prisons website and by the government in their letter in response to Sprull's motion. (ECF 35.) The PSR gives his "True Name" as "Spruill." The Court will refer to the defendant as "Sprull" throughout this Order.

[2] The defendant raised two objections to the facts and suggested corrections which were not objected to by the government. The Court made the changes requested by the defendant. (ECF 40 at Tr. 3-6.)

second victim. Sprull and Smalls then fled the scene in their own vehicle; the victims followed Sprull and Smalls in their SUV. Smalls fired multiple shots at the SUV, and one of the victims continued to follow Smalls and Sprull's car, eventually causing a crash between the two vehicles on the Grand Concourse in the Bronx. Sprull and Smalls fled the scene. A cellphone belonging to Sprull was later recovered from the vehicle by law enforcement. (PSR ¶¶ 9-11.)

Sprull was arrested for this incident in October 2018 and was later discovered to have been on "escape" status from the Bronx Residential Reentry Center (the "Bronx RRC") at the time of the offense conduct. Count 2 of the Indictment charges that Sprull committed the crime of escaping from a Bureau of Prisons facility. Sprull, while serving a sentence of imprisonment for an unrelated conviction (conspiracy to distribute and to possess with intent to distribute oxycodone (13-cr-580, Furman, J.)), was transferred to the Bronx RRC to serve the remainder of his sentence on July 6, 2017. On August 5, 2017, Sprull signed out of the Bronx RRC to go to the local hospital but failed to report back. The Bronx RRC issued an escape notice to the United States Marshals Service ("USMS"). Sprull eventually did return to the Bronx RRC, where he was informed that he had violated RRC policy and was scheduled to be transferred to the Metropolitan Detention Center ("MDC") because of his violation. On August 9, 2017, when agents of the USMS arrived at the RRC to take Sprull into custody and transfer him to the MDC, Sprull ran out of the RRC without authorization and did not return to the RRC after that date. (PSR ¶¶ 12-18.)

Sprull's sentencing took place on June 24, 2019. (ECF 40.) The PSR placed him in Criminal History Category VI, calculated his total offense level as 29, and calculated an advisory Guidelines range of 151 to 188 months. (PSR ¶¶ 52-55, 83; id. at 22.) Defendant reserved his right, in his plea agreement, to argue that he was not a "career offender," and at

sentencing, the Court heard argument from both the government and the defendant as to the correct Guidelines range. (ECF 35 at 1; ECF 40 at Tr. 6-20.) The Court ultimately concluded that the correct Guidelines range was 92 to 115 months' imprisonment, based on a total offense level of 26 and a Criminal History Category of IV. (ECF 40 at Tr. 17-20.) Defendant sought a below-Guidelines sentence of 72 months, while the government sought a sentence within the Guidelines range. (Id. at Tr. 20-21, 28, 29.)

The Court announced its proposed statement of reasons and proposed a sentence of principally 92 months' imprisonment. (Id. at Tr. 37-38.) Neither Sprull nor the government objected to the proposed sentence, and the Court imposed sentence. (Id.)

I. Extraordinary and Compelling Circumstances.

Sprull principally asserts that extraordinary and compelling circumstances exist in his case because of the poor health of his father, for whom Sprull states that he is the only available caregiver, and because of the status of his 9-year-old daughter, whose mother suffers from a mental illness that at times requires hospitalization. Sprull and his daughter's mother are litigating custody of their daughter in New Jersey state court. Finally, Sprull also cites the many hours of programming he has completed while in custody as an additional factor supporting his motion for compassionate release, though he acknowledges that his disciplinary record while in custody has not been "spotless," citing the dangerous nature of the facility in which he is housed.[3]

---

[3] The Court concludes that Sprull has exhausted his administrative remedies; he annexes to his motion his request to the Warden to file a motion on his behalf and the Warden's denial of that request, and the government concedes that he has exhausted his remedies. (ECF 67 at 13-15; ECF 82 at 3.)

3

First, Sprull cites the health of his father, who Sprull asserts is currently a patient at the Fort Tyron Center for Rehabilitation and Nursing. Sprull describes his father's health issues as including, but not limited to, hyperlipidemia (high cholesterol), hypertension (high blood pressure), mood disorder, muscle weakness, cardiac implants and grafts, impaired motor function, local infections, and atopic dermatitis (eczema). (ECF 67 at 3.) He notes that his father's care in this facility is extremely costly, bringing his family "perilously close to disaster financially," and that Sprull himself is the only available caregiver for his father once he leaves the rehabilitation facility. (Id. at 4.) He asserts that his mother is also in poor health, having suffered a stroke and awaiting a double-knee replacement, and that his mother will only allow his father to reside with her if defendant is available to take care of him, as she is not able to do so. (Id. at 7.) Sprull also annexes an affidavit signed by his father, informing the Court that he has suffered a stroke and also suffers from the aforementioned conditions, among others; Sprull's father confirms that he is housed at Fort Tyron and that his stay as a patient there is "severely eating into any resources" he has, and he states that he cannot return home unless Sprull is there to take care of him, as he is the only one of his children who has the ability to do so. (Id. at 19.)

In addition, Sprull annexes an affidavit from his mother, who describes her own health issues and states that Sprull is the only one of her children who is available to take care of his father. (Id. at 17.) He also annexes an affidavit from his sister Margaret, who states that she lives in Virginia and cannot care for her father or Sprull's daughter. (Id. at 18.)

With respect to his 9-year-old daughter, Sprull asserts that her mother requires periodic hospitalizations for a mental health condition, and Sprull states that no one else is available to care for his daughter if her mother is hospitalized. (Id. at 4.) Sprull notes that his father is no longer able to look after his daughter due to his health issues; in his initial motion, he

4

did not mention whether his mother would be able to care for his daughter. (Id.) In his reply, dated September 2024, Sprull informs the Court that he is now engaged in a custody battle with the mother of his child, attaching a summons for a "temporary custody hearing" that he received from the Essex County Chancery Division, Family Part, in May 2024. (ECF 86 at 2, 13-15.) Sprull states that his parental rights were "given to" his mother, who currently has custody of his daughter, and so if his father is released from the rehabilitation center, his mother will have to look after both his father and his daughter, which she is not physically capable of doing. (Id. at 2.)

The mother of Sprull's daughter states, in an affidavit, that she is not able to take care of Sprull's father since he suffered his stroke, and confirms that she suffers from chronic mental health issues which require her hospitalization "for months at a time"; she asserts that she can no longer leave her daughter with Sprull's parents because they are not capable of caring for her, and if she is hospitalized, there will be no one to take care of her daughter in Sprull's absence. (ECF 67 at 20.)

Finally, Sprull informs the Court that he has learned respect for the law during his incarceration and cites his completion of over fifty Bureau of Prisons programs and his completion of the 500+ Hour Residential RDAP program. (Id. at 6-7.)

Sprull's projected release date is September 10, 2025. (ECF 86 at 28.)[4] Sprull submits a "COP-OUT Response" from the Bureau of Prisons dated August 27, 2024, stating that Sprull's Unit Team is recommending 181-270 days of RRC placement prior to his projected release date. (Id. at 28.) As Sprull notes, this would result in his entry into an RRC facility in December 2024 at the earliest and March 2025 at the latest. (Id. at 3-4.) Sprull states that this

---

[4] See also BOP Inmate Locator, https://www.bop.gov/inmateloc (last accessed Oct. 17, 2024).

would still, however, not allow him to take care of his father and daughter and seeks a sentence reduction to time served in order to "secure the lives" of those two family members. (ECF 86 at 3-4.)

The government acknowledges that Sprull's family situation is unfortunate and that his work toward rehabilitation is commendable. (ECF 82 at 5.) The government asserts, however, that Sprull's situation does not constitute extraordinary and compelling circumstances.

The Policy Statement found at U.S.S.G. § 1B1.13(b)(3) describes the criteria that may constitute extraordinary and compelling reasons in relation to "family circumstances of the defendant," including "[t]he death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition" and "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent." See also United States v. O'Bryant, 2023 WL 8447995, at *4 (S.D.N.Y. Dec. 6, 2023) (Engelmeyer, J.) (citation omitted) ("Where the defendant is the 'only available caregiver' for an immediate family member, this may support a sentence reduction."). "[C]ourts generally require a showing of 'evidence from several sources' indicating that the defendant 'is the only available caregiver' for a family member in 'dire conditions,' before concluding that 'an extraordinary and compelling reason has been established.'" United States v. Lindsey, 2021 WL 37688, at *3 (S.D.N.Y. Jan. 4, 2021) (citation omitted) (Swain, J.).

The government asserts that Sprull has not produced sufficient evidence to make this showing, such as medical records showing his father's condition or prognosis, or any statement from a medical professional about the care his father requires or whether his father will actually be discharged from Fort Tyron without any available caregiver. (ECF 82 at 5.) In his

September 2024 reply, Sprull provides three pages of his father's medical records from Fort Tyron Center for Rehabilitation and Nursing dated June 2023, and notes the difficulty of accessing additional records due to his incarceration, but suggests that the government has the power to obtain additional records through "FOIA (Freedom of Information Act)."  (ECF 86 at 1.)  These medical records list the conditions that Sprull describes in his motion and that his father describes in his affidavit and also lists his father's medications and his advance directives.  (Id. at 8-10.)  Sprull also informs the Court, in his reply, that his mother's own health conditions have worsened—she has suffered a stroke and was in a coma, and now suffers from "severe medical conditions which makes it hard for her to manage a 10 year old child," i.e., Sprull's daughter, for whom she is now caring.  (Id. at 2.)

        The Court acknowledges the unfortunate situation of members of Sprull's family and their healthcare needs.  But Sprull has not met his burden of demonstrating that the unfortunate circumstances, individually or collectively, constitute an extraordinary and compelling circumstance warranting compassionate release.

        The Court also notes that the PSR states that Sprull has another sister who lives in New York and who did not submit an affidavit stating that she was unable to care for Sprull's parents or his daughter.  (PSR ¶ 62.)  See also United States v. Romano, 707 F. Supp. 3d 233, 238 (E.D.N.Y. 2023) (citation omitted) ("Romano does not explain 'whether household members, friends in the community, or relatives other than his siblings,' mother, and nephew 'would have the time, money, and resources to help' his father.").

        As to Sprull's daughter, Sprull's September 2024 reply states both that he is currently trying to obtain custody of his daughter and that his mother is now caring for his daughter because she has his parental rights.  While the Court does not doubt Sprull's assertion

7

that his mother's medical conditions make it difficult for her to take care of his daughter, she has apparently been doing so for several months. Moreover, depending on how the custody dispute is resolved by the New Jersey state court, Sprull may not be able to care for his daughter even upon his release if her mother receives full custody of the child.

While courts have been "freed by Brooker to consider the myriad of family circumstances that might warrant granting compassionate release, § 3582(c)(1)(A)(i) still only authorizes release where the family circumstances are truly 'extraordinary and compelling,' and not merely the inevitable circumstances families face when a family member is incarcerated. Being separated from your wife and children and unavailable to care for aging parents are but two of the sad and inevitable consequences of incarceration." United States v. John, 2020 WL 6581217, at *2 (S.D.N.Y. Nov. 10, 2020) (McMahon, C.J.) (citing United States v. Brooker, 976 F.3d 228, 231 (2d Cir. 2020)).

In addition, the government acknowledges that Sprull has taken advantage of numerous Bureau of Prisons programs to help him successfully return to society post-incarceration; while noting that these efforts are commendable, the government also asserts that efforts at rehabilitation alone do not constitute extraordinary and compelling reasons. (ECF 82 at 6.) See Brooker, 976 F.3d at 237–38 (quoting 28 U.S.C. § 994(t)) (footnote omitted) ("The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'"). The government also submits Sprull's medical and disciplinary records while in custody that reflect approximately seven disciplinary infractions since 2019. Sprull acknowledges that his record has not been "spotless" and that "there is no excuse for [his] not being a model inmate,"

8

but cites the dangerous conditions of the facility in which he is incarcerated and his drug and mental health issues as reasons for this behavior. (ECF 86 at 2-3.)

Finally, Sprull also asserts that the differences between his role and the role of his co-defendant show that he is not a danger to the community, repeating the assertions he made, both at sentencing and in the section 2255 motion he submitted in 2021, that he had no knowledge that Smalls possessed a weapon at the time of the robbery and that he had a minor role in the offense as opposed to Smalls, whose sentence the Court reduced pursuant to Amendment 821. (ECF 86 at 3; ECF 78.) The Court notes that Smalls was also sentenced to a term of 92 months and that he was eligible for a "Status Points" sentence recalculation under Amendment 821; the Court therefore reduced his sentence from 92 to 87 months, with all other terms and conditions of his original judgment remaining in place. (ECF 79.) As will be discussed, however, Sprull does not qualify for such a reduction.

The Court therefore finds that extraordinary and compelling reasons do not exist to justify Sprull's release under section 3582(c)(1)(A).

II.   Section 3553(a) Factors.

The Court also concludes that if it were to find that extraordinary and compelling circumstances exist in this case, the section 3553(a) factors would still weigh against a sentence reduction.

As discussed, the Court sentenced Sprull principally to a term of 92 months—the low end of his Guidelines range of 92 to 115 months. (ECF 40 at Tr. 20, 37-38.) Sprull was convicted of one count of Hobbs Act Robbery and one count of escape. (ECF 39.)

As the Court recounted in its statement of reasons at Sprull's sentencing, Sprull, along with his co-defendant Janssen Smalls, committed a Hobbs Act Robbery while Sprull was on "escape" status from the Bronx RRC, a Bureau of Prisons facility, where he had been completing a previous 60-month federal sentence. (ECF 40 at Tr. 35.) Sprull's co-conspirator, Janssen Smalls, brandished and discharged the firearm during the robbery, striking one of the victims. (Id. at Tr. 33-34.) The Court noted that Sprull then robbed one of the victims, taking a bag and jewelry. (Id. at Tr. 34.) Sprull and Smalls then were chased in own their car by the victims, and Smalls fired multiple shots at the victims, ultimately leading to a car crash, after which Smalls and Sprull fled the scene. (Id.) In addition, Sprull was charged with and pleaded guilty to one count of escape.

As the Court noted at sentencing, Sprull committed these crimes while he was supposed to be serving a separate federal sentence. (Id. at Tr. 35.) The Court cited the consideration of promoting respect for the law and concluded that Sprull's actions demonstrated that he did not have that respect. (Id.) The Court also cited the need for just punishment and the protection of the community from crimes such as the Hobbs Act Robbery committed by Sprull. (Id.)

The need to protect the public from further crimes of this defendant has somewhat dissipated with his improvement in behavior during his incarceration. The need to impose just punishment for these serious offenses, to promote respect for law, and to deter others from committing similar crimes, however, weighs against a sentence reduction. The section 3533(a) factors weigh against Sprull's application.

III.  <u>Amendment 821.</u>

Sprull also requests a reduction in his sentence pursuant to Amendment 821 to the Sentencing Guidelines, which went into effect on November 1, 2023 and applies retroactively. (ECF 67 at 10.)  The Court concludes that Sprull is not eligible for a reduction under Amendment 821.

Sprull asks the Court to "remove the 2 point enhancement for being on Probation at the time of his current offense." (<u>Id.</u>)  The Court construes this as a request for a Status Points recalculation.  Sprull is eligible for a Status Points recalculation because he received an enhancement for committing the instant offense while under a criminal justice sentence. (PSR ¶ 53.)

At sentencing, Sprull had an original subtotal criminal history score of 7, which was then enhanced by 2 points because he had committed the offense while under a criminal justice sentence for his prior conviction in November 2014.  (PSR ¶ 53.)  This brought his total criminal history score to 9, which translated to a Criminal History Category of IV.  (<u>Id.</u> ¶ 54.)  This Criminal History Category was adopted by the Court at the time of sentencing and was not objected to by either the government or defendant.  (ECF 40 at Tr. 20.)

Under the Status Points recalculation, the Court adds 1 point, rather than 2, to Sprull's original subtotal score of 7, because he had 7 or more criminal history points and had committed the instant offense while under a criminal justice sentence. U.S.S.G. § 4A1.1(e). This gives Sprull an amended total criminal history points of 8, rather than 9, but this still translates into a Criminal History Category of IV.  Therefore, this recalculation does not result in a change in Sprull's Guidelines range or sentence.

Sprull also did not have zero criminal history points at the time of sentencing, so he is ineligible for a Zero-Point Offender reduction. (See PSR ¶¶ 4(k), 47-51.)

In support of his request for a sentence reduction under Amendment 821, Sprull asserts that if his Guidelines range were calculated today, the convictions he incurred "that are 15 years old when [he] was a youth" would not be included in the calculation, because the Sentencing Commission has indicated that downward departures in sentencing may be warranted due to a defendant's youth at the time of the offense. (ECF 86 at 4.)

But in his PSR, to which Sprull did not object at sentencing, Probation did not identify any factors that would warrant a downward departure from Sprull's Guidelines sentencing range. (PSR ¶ 95.) And, as explained, Sprull received the 2-point enhancement because he committed the instant offense while serving a prior criminal justice sentence that he received for his November 2014 conviction for conspiracy to distribute and possess with intent to distribute narcotics, which he committed when he was approximately 23 years old. (PSR ¶¶ 51, 53.) His PSR also reflects that he had no juvenile adjudications and that his earliest arrest and conviction took place in 2008, when he was eighteen. (PSR ¶¶ 46-47.)

Sprull thus is not eligible for a sentence reduction pursuant to Amendment 821.

CONCLUSION

Sprull's motion for relief under 28 U.S.C. § 3582(c)(1)(A) is DENIED. His motion for a sentence reduction under Amendment 821 is also DENIED. The Clerk is respectfully directed to terminate the motion (ECF 67).

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
October 18, 2024

Copy mailed to:

MATTHEW SPRULL, Register No. # 69065-054
USP Canaan
U.S. PENITENTIARY
P.O. BOX 300
WAYMART, PA  18472